Filed 11/19/20  Cervantes v. Lucky B, Inc. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CUSTODIO CERVANTES, | B302380 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC680517) |
| v. | |
| LUCKY B, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa Beaudet, Judge.  Affirmed.

Law Offices of Gregory W. Patterson and Gregory W. Patterson for Defendants and Appellants.

Gould & Associates, Michael A. Gould, and Aarin A. Zeif for Plaintiff and Respondent.

# INTRODUCTION

Respondent Custodio Cervantes sued his former employer, appellant Lucky B, Inc., and a related entity, appellant Lucky BZ, Inc., for failure to pay overtime. Appellants contended respondent was an exempt executive and was thus not entitled to overtime pay. Following a bench trial, the trial court found that respondent was not exempt because he spent most of his time engaged in nonexempt work, including five to seven hours per day doing paperwork in his office. On appeal, appellants challenge the court's classification of respondent's paperwork as nonexempt. Finding no error, we affirm.

# BACKGROUND

A. *The Parties and This Action*

From September 2016 to July 2017, respondent worked as a salaried warehouse manager for Lucky B, which sells packaging supplies to other companies. After his employment with the company ended, respondent sued appellants for various pay-related Labor Code violations, including, as relevant here, failure to pay overtime compensation. He asserted the company misclassified him as an executive who was exempt from overtime pay requirements. The matter proceeded to a bench trial.

B. *The Trial*

The evidence at trial focused on appellants' affirmative defense that respondent was an exempt executive who spent

2

most of his time doing managerial work and was thus not entitled to overtime wages.  Multiple witnesses testified about respondent's job duties:  supervising and dispatching delivery drivers, reviewing and signing orders, organizing the warehouse (either by instructing subordinates or by using a forklift or a pallet jack to move inventory himself), preparing orders by "pulling" and wrapping inventory (either himself or by instructing subordinates),[1] and doing paperwork, which included logging all orders, invoice numbers, and deliveries in the computer, and ensuring all documents were properly signed by drivers and customers.  There was conflicting testimony as to how much time respondent spent on various tasks.

As to respondent's paperwork, Saghar Sarah Zarabian, Lucky B's owner, testified:  "[Respondent] had to record every invoice number going out, every pickup that was done.  . . . make sure all documents were signed.  Drivers have to sign.  Pullers need to sign.  Warehouse manager needs to sign that the order is correct.  Once the drivers come back in, he was required to make sure signature of the customer was on there, if there was a pickup check, it was done.  If purchase order for an item was made, it was picked up correctly, delivered, signed for, no back orders.  [H]e had to record all this on a daily log that had to be submitted with

---

[1]    Regarding the pulling of orders, respondent testified he would receive order sheets, locate the necessary items in the warehouse, and retrieve them for the drivers.

these documents." Zarabian also testified that if a certain item was out of stock or running low, respondent was supposed to let management know. Respondent testified, however, that he was not responsible for ordering or "controlling stock in the warehouse." Khristina Quilban, Lucky B's HR and payroll administrator, testified that in doing his office work, respondent was "doing the parts for the whole," and noted, for example, that he would log drivers' arrival into the computer "so all of us can see the live report from the system."

C. *The Trial Court's Statement of Decision and Judgment*

Following trial, the trial court issued a 24-page statement of decision, finding respondent was not an exempt executive because he spent most of his time doing nonexempt work. The court found that respondent typically worked 10 to 10.5 hours per day. According to the court's finding, respondent spent one and a half to two and a half hours per day doing "nonexempt pulling and other similar nonexempt work." While the court found that respondent spent "some amount of time" on exempt management activities, such as dispatching drivers and organizing activities in the warehouse, it found he spent much of his time -- five to seven hours per day -- doing paperwork. The court concluded the tasks involved in respondent's paperwork were nonexempt, explaining: "Accepting Zarabian's testimony as to the nature of the computer or

4

paper work as accurate, recording invoice numbers, ensuring there is a signature on a document, and creating a daily log of orders in and out, is not management activity.  There is no discretion or judgment involved in deciding which orders to log in and any clerical employee could input the information described by Zarabian."

Accordingly, the trial court concluded respondent was entitled to overtime compensation and awarded him about $15,000 in overtime pay.  Appellants timely appealed, challenging only the court's classification of respondent's paperwork.

## DISCUSSION

A. *Governing Legal Principles*

1. *The Labor Code and the IWC's Wage Orders*

"California's Labor Code mandates overtime pay for employees who work more than 40 hours in a given work week.  (Lab. Code, § 510, subd. (a).)  However, the Legislature authorized the Industrial Welfare Commission (IWC) to establish exemptions for various categories of employees, including 'executive . . . employees,' where the employee is 'primarily engaged in the duties that meet the test of the exemption,' the employee 'customarily and regularly exercises discretion and independent judgment in performing those duties,' and the employee 'earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment.'  (Lab. Code, § 515,

subd. (a).)" (*Batze v. Safeway, Inc.* (2017) 10 Cal.App.5th 440, 471, fn. omitted.)

Pursuant to its statutory authority, the IWC promulgated several Wage Orders, codified in the California Code of Regulations, providing criteria for determining whether an employee may be classified as an exempt executive.[2] (See Cal. Code Regs., tit. 8, § 11010 et seq.) Wage Order No. 7-2001 governs employees of the "mercantile industry."[3] (Cal. Code Regs., tit. 8, § 11070 (Wage Order).) To be an exempt executive under this Wage Order, an employee must be "primarily engaged in duties which meet the test of the exemption." (*Id.*, § 11070, subd. (1)(A)(1)(e).) For purposes of the Wage Order, "[p]rimarily" means "more than one-half the employee's work time." (Cal. Code Regs., tit. 8, § 11070, subd. 2(K).) As to the nature of the duties that meet the test of the exemption, the Wage Order instructs that "exempt work" and "non-exempt work" "shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order [2001]: 29

---

[2]     The IWC was defunded in 2004, but its wage orders remain in effect. (*Batze v. Safeway, Inc.*, *supra*, 10 Cal.App.5th at 471, fn. 34.)

[3]     It is undisputed that appellants are in the mercantile industry.

C.F.R. Sections 541.102, 541.104-111, and 541.115-116."[4]
(Cal. Code Regs., tit. 8, § 11070, subd. 1(A)(1)(e).)

### 2. *The Federal Regulations*

#### a. *Exempt Managerial Work*

"According to the 2001 version of the federal regulations, determining whether a particular kind of work is exempt or nonexempt should usually be an easy task. 'In the vast majority of cases[,] the bona fide executive employee performs managerial and supervisory functions which are easily recognized as within the scope of the exemption.' (§ 541.102(a) (2001).) Such functions include: '[i]nterviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and

---

[4] Undesignated section references are to the 2001 version of title 29 of the Code of Federal Regulations.

7

supplies; providing for the safety of the men and the property.' (§ 541.102(b) (2001).)" (*Safeway Wage & Hour Cases* (2019) 43 Cal.App.5th 665, 676-677.)

### b. *Work "Directly and Closely Related" to Managerial Functions*

"[T]he federal regulations also recognize a category of exempt tasks that may not be so easily identifiable as exempt -- work 'directly and closely related' to the management of a department and the supervision of employees." (*Safeway Wage & Hour Cases*, *supra*, 43 Cal.App.5th at 677, quoting § 541.108.) This category brings within the scope of exempt work "not only the actual management of the department and the supervision of the employees therein, but also activities which are closely associated with the performance of the duties involved in such managerial and supervisory functions or responsibilities." (§ 541.108(a).) Section 541.108(a) explains: "The supervision of employees and the management of a department include a great many directly and closely related tasks which are different from the work performed by subordinates and are commonly performed by supervisors because they are helpful in supervising the employees or contribute to the smooth functioning of the department for which they are responsible. Frequently such exempt work is of a kind which in establishments that are organized differently or which are larger and have greater

8

specialization of function, may be performed by a nonexempt employee hired especially for that purpose."[5]

This category of exempt work is "narrow." (*Safeway Wage & Hour Cases*, *supra*, 43 Cal.App.5th at 682.) It is not intended "to expand the exemption, but simply to recognize that there are limited instances when production-type activities must be utilized to carry out the duties of the otherwise exempt employee." (Division of Labor Standards Enforcement, Policies and Interpretations Manual (2002

---

[5] The regulations provide examples of tasks that may be "directly and closely related" to managerial or supervisory functions:

"(b) Keeping basic records of working time . . . is frequently performed by a timekeeper employed for that purpose. In such cases the work is clearly not exempt in nature. In other establishments which are not large enough to employ a timekeeper, or in which the timekeeping function has been decentralized, the supervisor of each department keeps the basic time records of his own subordinates. In these instances, . . . the timekeeping is directly related to the function of managing the particular department and supervising its employees. . . .

"(c) Another example of work which may be directly and closely related to the performance of management duties is the distribution of materials or merchandise and supplies. . . . In [some] establishments it is not uncommon to leave the actual distribution of materials and supplies in the hands of the supervisor. In such cases it is exempt work since it is directly and closely related to the managerial responsibility of maintaining the flow of materials. . . ." (§ 541.108.)

update) (DLSE Manual), § 51.4.2.)[6]  "[I]f work of this kind takes up a large part of the employee's time it would be evidence that . . . such work is a production operation rather than a function directly and closely related to the [employee's] supervisory or managerial duties . . . ." (§ 541.108(g).)

The regulations recognize that it may be hard to distinguish work "directly and closely related" to managerial functions from "production operation[s]."  (§ 541.108(g).) Thus, in *Heyen v. Safeway, Inc.* (2013) 216 Cal.App.4th 795, 822 (*Heyen*), we stated that "[u]nderstanding the manager's purpose in engaging in such tasks . . . is critical to the task's proper categorization."  We explained that a task may be exempt when a supervisor undertakes it "because it is 'helpful in supervising the employees or contribute[s] to the smooth functioning of the department,'" but will be nonexempt if "performed for a different, nonmanagerial reason . . . ." (*Ibid.*)

---

[6]  "The DLSE is the state agency charged with enforcing California's labor laws, including the IWC wage orders. . . . [W]ith the benefit of many years' experience, the DLSE has developed numerous interpretations of California's labor laws, which it has compiled in a series of policy manuals." (*Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 554-555, citations omitted.)  While the DLSE Manual is not binding on the courts, we may consider it for its persuasive value. (*Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829, 841.)

Notably, however, in *Safeway Wage & Hour Cases*, *supra*, 43 Cal.App.5th at 682, we clarified that a task will not be exempt merely because it "'contributes to the smooth functioning'" of the relevant department. (*Ibid.* [noting that manager of supermarket store "arguably intends to facilitate the smooth functioning of the store in performing any task otherwise done by hourly employees, be it mopping floors or returning shopping carts" (italics omitted)].) Rather, the purpose inquiry in the context of work "'directly and closely related'" to management must be anchored in the limiting principles set forth in the regulations. (*Ibid.*) As relevant here, to be considered exempt under this category, the work must be "closely associated with the performance of the duties involved in [the employee's] managerial and supervisory functions or responsibilities." (§ 541.108(a).) "And if work that is not inherently managerial 'takes up a large part of the employee's time,' it is evidence that this work 'is a production operation rather than a function directly and closely related to the [employee's] supervisory or managerial duties . . . .'" (*Safeway Wage & Hour Cases*, *supra*, at 683, quoting § 541.108(g).)

c. *Nonexempt Work*

The regulations define nonexempt work to include all work that is neither management or supervision, nor directly and closely related to those functions. (§ 541.111(a).) Section 541.111 explains: "Nonexempt work is easily identifiable where, as in the usual case, it consists

11

of work of the same nature as that performed by the nonexempt subordinates of the 'executive.'  It is more difficult to identify in cases where supervisory employees spend a significant amount of time in activities not performed by any of their subordinates and not consisting of actual supervision and management.  In such cases[,] careful analysis of the employee's duties with reference to the phrase 'directly and closely related . . .' will usually be necessary in arriving at a determination."  (§ 541.111(b).)

Of particular relevance here, the regulations in section 541.115 discuss the specific case of a "working foreman," "who regularly performs 'production' work or other work which is unrelated or only remotely related to his supervisory activities."  (§ 541.115(a).)  Under the regulations, the working foreman cannot be classified as an exempt executive.  (*Ibid.*)  One type of working foreman "is one who spends a substantial amount of time in work which, although not performed by his own subordinates, consists of ordinary production work or other routine, recurrent, repetitive tasks which are a regular part of his duties." (§ 541.115(c).)  "Such an employee is in effect holding a dual job. . . .  His nonsupervisory duties in such instances are unrelated to anything he must do to supervise the employees under him or to manage the department.  They are in many instances mere 'fill-in' tasks performed because the job does not involve sufficient executive duties to occupy an employee's full time."  (*Ibid.*)  Typical employees fitting this description include "[f]oremen or supervisors who perform

12

clerical work other than the maintenance of the time and production records of their subordinates; for example, the foreman of the shipping room who makes out the bills of lading and other shipping records, the warehouse foreman who also acts as inventory clerk, the head shipper who also has charge of a finished goods stock room, assisting in placing goods on shelves and keeping perpetual inventory records, or the office manager, head bookkeeper, or chief clerk who performs routine bookkeeping." (§ 541.115(c)(3).)

B. *Analysis*

Appellants challenge the trial court's classification of respondent's paperwork as nonexempt. The classification of tasks as exempt or nonexempt is a mixed question of law and fact. (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794.) "We review the trial court's factual findings for substantial evidence and independently determine issues of law . . . ." (*Walker v. Physical Therapy Bd. of California* (2017) 16 Cal.App.5th 1219, 1227.) Substantial evidence is evidence of ponderable legal significance that is reasonable, credible, and of solid value. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.) Because appellants had the burden to prove that the executive exemption applied to respondent, the question on appeal is whether the trial court was compelled to find the exemption applicable. (See *Safeway Wage & Hour Cases*, *supra*, 43 Cal.App.5th at 671 [executive exemption is an affirmative defense that employer must prove]; *Ajaxo, Inc. v. E*Trade*

13

*Financial Corp.* (2020) 48 Cal.App.5th 129, 163 ["'where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law'"].)

As an initial matter, appellants contend the court misapplied the legal standard because it based its classification of respondent's paperwork on its finding that "any clerical employee" could have done it. They argue the court failed to consider the purpose for which respondent performed the work.

The trial court did not misapply the legal standard. We read the court's statement that any clerical employee could have done respondent's paperwork to mean that this work served no managerial purpose. To the extent appellants contend the court's statement was ambiguous or suggest the court should have made additional findings, they have forfeited any such contention by failing to object to the statement of decision below. (See *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1134 [party claiming deficiencies in statement of decision must bring them to trial court's attention].) The remaining question, therefore, is whether the record supported the trial court's conclusions. We conclude it did.

Respondent's paperwork was by no means inherently managerial. Contrary to appellants' argument, this work -- recording invoice numbers, logging orders, and ensuring

14

documents were signed -- did not "itself control[] the distribution or flow of merchandise."[7]

Nor was the trial court compelled to find respondent's paperwork directly and closely related to his managerial functions. According to the court's uncontested findings, respondent's clerical office work took up the bulk of his time, five to seven hours per day or about 50%-70% of his average workday. This fact alone sufficed for the court to find these tasks were not directly and closely related to respondent's managerial functions and were thus nonexempt. (See *Safeway Wage & Hour Cases*, *supra*, 43 Cal.App.5th at 683, quoting § 541.108(g).) But respondent also spent an additional one and a half to two and a half hours per day, about 15%-25% of his average workday, on undisputedly nonexempt physical tasks, such as using a forklift to move inventory. Given that respondent spent the bulk of his time on tasks that were not inherently managerial, his managerial functions, such as dispatching drivers and organizing activities in the warehouse, were relatively

---

[7] In their reply brief, appellants assert respondent's work was inherently managerial because it furthered his exercise of quality control over his subordinates' work. Initially, appellants have forfeited this contention by failing to raise it in their opening brief. (See *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 726 [failure to raise argument in opening brief constitutes forfeiture].) Moreover, contrary to appellants' suggestion, a task is not *inherently* managerial merely because it furthers a managerial function.

15

minimal, further supporting the court's finding that his clerical work was not undertaken to aid him in performing his managerial duties.

Appellants claim the amount of time respondent spent doing paperwork is immaterial because his subordinates did not perform similar work. They are mistaken. Whether subordinates perform similar tasks has no bearing on the regulations' unfavorable treatment of work that consumes a large part of the employee's time. (See § 541.108(g).)

The trial court was also entitled to find respondent's paperwork nonexempt based on its nature and its lack of connection to his managerial functions. Appellants present argument of varying levels of plausibility regarding the purported connection between the relevant tasks -- data entry and verification of signatures on documents -- and respondent's managerial duties. They contend this work was "helpful" to respondent's functions of "'controlling the flow and distribution of materials or merchandise and supplies' into and out of the warehouse," "'maintaining production or sales records for use in supervision or control,'" "'apportioning work among workers,'" and "optimizing and organizing the warehouse . . . ." Yet a task is not exempt merely because it could conceivably be done in aid of managerial responsibilities; rather, the relevant employee must undertake it *because* it furthers his or her managerial duties. (*Heyen*, *supra*, 216 Cal.App.4th at 822.) Appellants point to no evidence showing whether and to what extent respondent actually used his paperwork in furtherance of his

16

managerial functions.[8] In fact, there was evidence suggesting that the purpose of at least some of respondent's clerical work was to aid other managers' work. Quilban testified that in his office work, respondent would do "the parts for the whole," including by logging drivers' arrival into the computer, "so all of us can see the live report from the system."

The record therefore supported a conclusion that respondent was a nonexempt "working foreman" who regularly performed work that was "unrelated or only remotely related to his supervisory activities." (§ 541.115(a).) In particular, respondent appears to have fit the description of a nonexempt foreman or supervisor who performed clerical work other than the maintenance of the

---

[8]     Appellants claim respondent testified "he would use 'stacks of orders' to 'locate where the item was in the warehouse' to facilitate pulling and shipping by his employees." That is inaccurate. Respondent testified only that he would receive order sheets and would then locate the requested items and pull them for the drivers. Nothing in his testimony tied his logging of the orders to his ability to locate and pull the items.

Appellants also emphasize Zarabian's testimony that respondent would let upper management know if an item was out of stock or running low, so that it could be back ordered. Yet nothing in the record suggests respondent himself was responsible for deciding what or how much to order. Indeed, respondent testified he was not responsible for ordering or controlling stock in the warehouse. Thus the mechanical task of informing others that product was out or running low did not further his own managerial duties.

17

time and production records of his subordinates, such as "the foreman of the shipping room who makes out the bills of lading and other shipping records" or "the warehouse foreman who also acts as inventory clerk." (§ 541.115(c)(3).) In short, the trial court did not err in finding respondent's paperwork activities were nonexempt, and thus it did not err in finding respondent was not an exempt executive.

**DISPOSITION**

The judgment is affirmed. Respondent is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, P. J.

We concur:


WILLHITE, J.


COLLINS, J.